## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Collar Jobs, LLC** | : | Civil Action No. _____ |
| 13785 Research Boulevard, Suite 125 | : | |
| Austin, Texas 78750 | : | JUDGE _____ |
| | : | |
| -and- | : | |
| | : | |
| **Collar Diversified, LLC** | : | **VERIFIED COMPLAINT AND** |
| 30625 Solon Road, Suite F | : | **DERIVATIVE COMPLAINT FOR** |
| Solon, Ohio 44139 | : | **PRELIMINARY AND PERMANENT** |
| | : | **INJUNCTION, AND MONEY** |
| Plaintiffs, | : | **DAMAGES** |
| | : | |
| v. | : | |
| | : | **(Jury Demand Endorsed Herein)** |
| **Benjamin Stocum** | : | |
| 1207 Summit Drive | : | |
| Cleveland, OH 44124-1516 | : | |
| | : | |
| | : | |
| -and- | : | |
| | : | |
| **Delta Diversified, Inc.** | : | |
| 30625 Solon Road, Suite F | : | |
| Solon, Ohio 44139 | : | |
| | : | |
| -and- | : | |
| | : | |
| **Cheryl Pearson** | : | |
| 31502 Orchard Drive | : | |
| Willowick, OH 44095-3548 | : | |
| | : | |
| -and- | : | |
| | : | |
| **Christina Rakich** | : | |
| 37241 Park Ave. | : | |
| Willoughby, OH 44094-5938 | : | |
| | : | |
| -and- | : | |
| | : | |
| **Regina Ziccardi** | : | |
| 8817 Wilson Mills Road | : | |
| Chesterland, OH 44026-1942 | : | |

-and-

**Abigail Burke**
24350 Woodside Lane
Beachwood, OH 44122

-and-

**Cullen Barelka**
4482 Laurel Road
Cleveland, OH 44121-3912

-and-

**Emily Slak**
2051 Bunts Road
Lakewood, OH 44107-6101

-and-

**Cassidy Czikray**
8155 Mulberry Road
Chesterland, OH 44026-1460

-and-

**Madison Lewis**
6499 Foxboro Dr
Cleveland, OH 44143

-and-

**Sean Hyde**
The Bingham Apartments
1278 W. 9th Street
Cleveland, OH 44113

Defendants.

## VERIFIED COMPLAINT

Plaintiffs Collar Jobs, LLC and Collar Diversified LLC, bring this action against Defendants and state, aver and allege as follows:

## NATURE OF THE ACTION

1.      Plaintiff Collar Jobs, LLC ("Collar Jobs") and Defendant Delta Diversified ("Delta") are 50% members of a joint venture, Plaintiff Collar Diversified LLC ("Collar Diversified" or "the Company"). The Company's operating agreement required both members' approval to take any significant, material action on behalf of the Company. This breach of contract and misappropriation of trade secrets action involves the egregious, unjustified, and sudden actions of Delta to the detriment of the Company and its equal member, Collar Jobs.

2.      The Company enjoyed significant financial growth and success in both 2021 and 2022, with increased success in the third quarter of 2022. On the tail of this increased success, Delta, through its owner Benjamin Stocum ("Stocum"), determined that it wanted controlling authority over the Company and began secretly scheming to take over the Company for Delta's and Stocum's own benefit.

3.      Collar Jobs owns the platform on which the Company operated from its inception until October 7, 2022, when Stocum suddenly and unilaterally declared that the Company would no longer operate on a platform that he did not personally control.

4.      The Company rented the platform from Collar Jobs for a monthly subscription fee. This platform was turnkey and integrated and allowed the Company to operate successfully. The Collar Jobs platform includes: automated workflow processes, the "Bullhorn database" containing customer and candidate leads, the Collar Jobs and Collar Diversified web domains, the Company's email accounts, the Company's voice, SMS, storage, and chat capabilities, the

Company's LinkedIn social-media property, and the use of the Collar Jobs brand and logo. This combined suite of technology and lead generation is crucial to the operations and revenue generation of the Company. The Company's entire business model was predicated on the Collar Jobs platform.

5.      Delta, through Stocum and some of the individual employee defendants, stole crucial data developed by Collar Jobs and the Company and attempted to poorly replicate the Collar Jobs platform, all without the approval of 50% owner Collar Jobs. Without notifying or seeking approval from Collar Jobs, Stocum: (1) purchased and launched a new brand, name, logo, website, email domain, email addresses, and new company LinkedIn page under the name "Collar Talent," to which Collar Jobs has no access; (2) integrated with Delta's existing communications systems, data, and a new phone system, with new phone numbers, SMS, and chat for "Collar Talent;" (3) took **over one thousand** entries from Collar Jobs' Bullhorn database that contained confidential, trade secret information and proprietary processes regarding the Company's recruiting of candidates and customers, and, upon information and belief, integrated that with a CRM under Delta's control; and (4) comingled the employees, data, workflow processes, and business of the Company and Collar Jobs into Delta's competing building technologies business segment.

6.      By these actions, Delta has deliberately taken the Company off the trajectory of success it was on and has integrated the Company with Delta's building technologies segment, which is a direct competitor to the Company in the recruiting business. These actions are clearly for the benefit of Delta, not the Company.

7.      These actions, if not immediately ceased, will cause irreparable and permanent injury to both Collar Jobs and the Company.

## THE PARTIES

8.      Plaintiff Collar Jobs is a Delaware limited liability company with its principal place of business located at 13785 Research Boulevard, Suite 125, Austin, Texas 78750.

9.      Plaintiff Collar Diversified, LLC (the "Company") is an Ohio limited liability company with its principal place of business located at 30625 Solon Road, Suite F, Solon, Ohio 44139.

10.      Plaintiff Collar Jobs is a member of the Company and was a member of the Company at all times during the events set forth in this Complaint.

11.      Collar Jobs brings this lawsuit on behalf of itself, and derivatively on the Company's behalf pursuant to Ohio Revised Code §§ 1706.61-1706.617.  Collar Jobs has taken the initiative to institute these proceedings when the Company itself lacks the wherewithal to do so on its own and will fairly and adequately represent its interests in pursuing the litigation. These considerations establish Collar Jobs' standing to sue derivatively pursuant to R.C. 1706.611.

12.      Written demand has been made upon the Company regarding the events set forth in this Complaint, and irreparable injury to the Company would occur if Collar Jobs would wait ninety (90) days to file this Complaint. *See* R.C. 1706.612.  The demand is attached as Exhibit 1 to the Complaint.

13.      Defendant Benjamin Stocum is an Ohio resident who has an address of 1207 Summit Drive, Cleveland, Ohio, 44124-1516.

14.      Defendant Delta is an Ohio corporation with a principal place of business located at 30625 Solon Road, Suite F, Solon, Ohio 44139.  Delta is a member of the Company.

15.     Defendant Cheryl Pearson ("Pearson") is an Ohio resident who has an address of 31502 Orchard Drive, Willowick, Ohio 44095-3548.

16.     Defendant Christina Rakich ("Rakich") is an Ohio resident who has an address of 37241 Park Avenue, Willoughby, Ohio 44094-5938.

17.     Defendant Regina Ziccardi ("Ziccardi") is an Ohio resident who has an address of 8817 Wilson Mills Road, Chesterland, Ohio 44026-1942.

18.     Defendant Abigail Burke ("Burke") is an Ohio resident who has an address of 24350 Woodside Lane, Beachwood, OH 44122.

19.     Defendant Cullen Barelka ("Barelka") is an Ohio resident who has an address of 4482 Laurel Road, Cleveland, Ohio 44121-3912.

20.     Defendant Emily Slak ("Slak") is an Ohio resident who has an address of 2051 Bunts Road, Lakewood, Ohio 44107-6101.

21.     Defendant Cassidy Czikray ("Czikray") is an Ohio resident who has an address of 8155 Mulberry Road, Chesterland, Ohio 44026-1460.

22.     Defendant Madison Lewis ("Lewis") is an Ohio resident who has an address of 6499 Foxboro Dr., Cleveland, OH 44143.

23.     Defendant Sean Hyde ("Hyde") is an Ohio resident who has an address of 1278 W. 9th Street Cleveland, OH 44113

## JURISDICTION AND VENUE

24.     This Court may exercise federal jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.  This Court may exercise supplemental jurisdiction over the non-federal claims herein because the non-federal claims arise out of the same facts and circumstances as the federal claims.

25.     This Court may exercise personal jurisdiction over Defendants because they are residents of Ohio.

26.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because at least one Defendant resides within this District and the events giving rise to this action occurred, in part, in this District.

## FACTUAL BACKGROUND

### *Formation of the Company*

27.     The Company is a recruitment firm for the building technologies industry.  It is different from most recruitment firms because it allows employers to find candidates on-demand, with the use of the innovative and proprietary processes and technology owned and deployed by Collar Jobs.

28.     Collar Diversified is an Ohio limited liability company with two members, both of which hold 50% of the units of the Company: Collar Jobs and Delta.  Thus, neither Collar Jobs nor Delta holds a majority of the outstanding units of the Company.

29.     Defendant Stocum owns a controlling interest in Delta, and Park Resilience Holdings, LLC ("Park") owns 100% of Collar Jobs.  Geoffrey Loree ("Mr. Loree") is the sole member and managing director of Park.

30.     On May 18, 2020, Delta and Collar Jobs executed an Operating Agreement (the "Agreement") for the Company.  A true and correct copy of the Agreement is attached hereto as Exhibit 2.

31.     The Agreement set forth the rules of governance and management of the Company.

32.     Under the Agreement, the Company was to be "managed by the Members," and while the members could "delegate some or all of their management rights," such delegation was required to be made by vote or written consent.  (Agreement § 5.1; 5.7.)

33.     Also under the Agreement, members expressly did not have "the authority or power to act for or on behalf of the Company."  (Agreement § 5.3.)

34.     The Company was not permitted to "without the approval of the Members holding at least a majority of the then-outstanding Units . . .materially change the principal business of the company; or . . . amend the Articles of Organization or this Agreement." (Agreement § 5.2.)

35.     The Agreement also placed confidentiality obligations on the members of the Company:

> **Confidentiality.**  No member may divulge, communicate, use to the detriment of the Company or for the benefit of any other Person, or misuse in any way, any confidential information or trade secrets of the Company, including personnel information, secret processes, know-how, customer lists, formulas or other technical data . . .Each Member acknowledges and agrees that any information or data such Member has acquired on any of these matters or items were received in confidence and as a fiduciary of the Company. Each member acknowledges that the Company would be irreparably damaged by reason of any violation of the provisions of this Section 10.3, and that any remedy at law for a breach of such provisions would inadequate.  Therefore, the Company shall be entitled to seek and obtain injunctive or other equitable relief (including, but not limited to, a temporary restraining order, a temporary injunction or a permanent injunction) against any Member, for a breach or threatened breach of such provisions and without the necessity of proving actual monetary loss . . .

(Agreement § 10.3.)

36.     Delta and Collar Jobs successfully operated the Company under this Agreement for the past two years.

37.     Collar Jobs owns the platform upon which the Company operates its business. The Company pays Collar Jobs a monthly subscription fee in exchange for its use of Collar Jobs' platform.

38.     The platform is a turnkey, integrated solution that allowed the Company to Operate successfully.

39.     Collar jobs owns the Company's web domain—www.collardiversified.com—and owned the email exchange used by the Company (*i.e.*, @collardiversified.com).

40.     The platform included automated workflow processes, the "Bullhorn database" containing customer leads and candidate leads, the Collar Jobs and Collar Diversified website and domains, the Company's email accounts, the Company's voicemail, SMS, storage, and chat capabilities, the Company's LinkedIn social-media property, and the Collar Jobs brand and logo. This entire suite of technology and lead generation is crucial to the operations and revenue generation of the Company and without it, the Company's success would not be possible.

41.     For example, Collar Jobs' technology aggregated and automated information regarding potential customers and potential candidates and compile it as a user-friendly platform. The Company was given access to the database and the platform in return for its subscription payments to Collar Jobs.

42.     The Bullhorn database contained information on "hot leads," that included non-public information such as candidate name and personal contact information, whether the candidate had been validated, candidate skills, status with the Company, whether the candidate had interviewed with any clients, whether the candidate was placed and any fees for the placement.  It also reflected and automated the proprietary workflow process that Collar Jobs developed for managing candidates all the way through the placement process.

43.     These databases and the workflow, because they are on Collar Jobs' platform, are owned by Collar Jobs, not the Company.  The Company had a right to access and use as part of

its subscription to Collar Jobs, but was not permitted to download or replicate the information, for any use other than Company business.

44.     Collar Jobs protected this confidential, trade secret information by requiring non-disclosure agreements for individuals using the platform, restricting access to the Bullhorn database, requiring passwords to access the other parts of the cloud system, and preventing individuals from downloading or exporting copies of the database.

45.     Delta managed the Company's cash flow and received a shared services fee every month from the Company to pay for employee space, computer equipment, payroll, human resource services, and accounting services.

46.     Delta's employees and the Company's employees work at the same physical address, but separate and distinct workspaces, in Solon, Ohio.  Delta's employees are separate from the Company's employees, as Delta is an entirely separate business from the Company. Thus, the Company's employees had separate email addresses and phone numbers from the Delta employees, in addition to an entirely distinct set of tools, training, resources, and work environment.

### The Company's Employee Agreements

47.     To reach the Company's goals and become successful, the Company has nine (9) Solon, Ohio-based employees.  These employees are Defendants Pearson, Rakich, Ziccardi, Burke, Barelka, Slak, Czikray, Lewis, and Hyde (collectively "Employee Defendants").

48.     Because of the innovative and proprietary nature of Collar Jobs' hiring and recruiting platform, and the confidential candidate and customer information housed therein, all employees, including each of the Employee Defendants were required to sign (1) an Employment Agreement and (2) a Nondisclosure Agreement.

49.     A true and correct copy of the form of the Employment and Nondisclosure Agreements executed by the Employee Defendants are attached hereto as Exhibit 3 and Exhibit 4 (redacted).   Collar Jobs and the Company are unable to access the Employee Defendants' Employment and Nondisclosure Agreements because they are held by Delta as part of its HR function for the Company for which Delta was paid out of Company earnings and Collar Jobs does not have current access to them.

50.     The Employment Agreement for each of the Employee Defendants contained the following non-compete clause:

> **Covenant Not to Compete.**  During the period in which an Employee is employed by the Company, and for a period of one (1) year thereafter, Employee hereby covenants that, without the prior written consent of Company, Employee will not, directly or indirectly, for any reason . . . engage in, assist or have any interest in, as principal, consultant, advisor, agent or financier, any business entity in competition with the Company, in which is or is about to become engaged in contacting, soliciting, or selling to, any customer of the Company who was a customer of the Company on or before the termination of the Employee's employment with the company.

*(*Employment Agreement § 9(a).)

51.     Each of the Employee Defendants entered into an Employment Agreement with the Company at the start of their employment.

52.     Each of the Employee Defendants also entered into the Nondisclosure Agreement with Collar Jobs to protect Collar Jobs' innovative and proprietary technology and systems for the Company that contained confidential, trade secret business information, including customer and candidate information.   This includes the Bullhorn database and the platform which Collar Jobs rents out to the Company described *supra* in Paragraphs 4, 5, 40, 42.

53.     The Nondisclosure Agreement for each of the Employee Defendants provided that the Employee Defendants were prohibited from disclosing any of Collar Jobs' confidential

information to any person or entity without Collar Jobs' consent. (Nondisclosure Agreement § 2.)

54.     Confidential information under the Nondisclosure Agreement is defined as "information relating to [Collar Jobs] or its current or proposed business, including financial statements, budgets and projections, customer identifying information, potential and intended customers, employers, products, computer programs, specifications, manuals, software, analysis, strategies, marketing plans, business plans, and other confidential information . . ." (Nondisclosure Agreement § 1.)

55.     Moreover, the Nondisclosure Agreement provided that "breach of this agreement will cause irreparable harm" to Collar Jobs, and that if Collar Jobs discovers that unauthorized disclosure of its Confidential Information occurred, it would be permitted to "without posting a bond or other security, seek an injunction, specific performance, or other equitable remedy to prevent competition or further disclosure, and may pursue other legal remedies." (Nondisclosure Agreement § 7(b).)

### *Delta, at the Direction of Stocum, Plans to Unlawfully Take Control Of the Company*

56.     Collar Jobs and the Company have only now learned that, unbeknownst to them, Delta's deceitful conduct began by July 2022.

57.     On July 18, 2022, Defendant Hyde emailed a proprietary job listing string to Ryan Feimer, an employee of Delta. That job listing string was used by the Company to identify placement opportunities. Defendant Hyde was working with Mr. Loree and his son, Gabe Loree, at Collar Jobs to automate and code job listing strings into the Company's systems as part of his employment with the Company. Defendant Hyde had no business reason to share the automated

string with Mr. Feimer.  A true and correct copy of the July 18 email is attached as Exhibit 5 (under seal).

58.     By at least September 2022, Delta and/or Stocum were actively plotting to take control of the Company's business and fold it into and/or under the control of Delta.

59.     On September 20, 2022, Stocum, without any notice to Collar Jobs or Mr. Loree began to work on the launch of a new and competitive website and branding with an outside marketing company, TKG.  Stocum informed TKG that the new website needed to be "set up as quickly as possible."  Stocum also began working with Delta's internal employees to set up new e-mail accounts under the Collar Talent name.

60.     Stocum provided TKG with sketches of a "new" logo for this new website. Tellingly, the sketches for the logo closely resembled the Company's logo (*i.e.*, a shirt collar), which was provided to it under the subscription with Collar Jobs.  Stocum was clear that he wanted to use a darker, royal blue color in the logo – the same shade of blue used in Delta's logo.

61.     Stocum was acutely aware that what he was doing was improper.  He told TKG that the Company's name was "Collar Diversified LLC, but the imaging [for the Company] is 'owned' by Collar Jobs, LLC, which I have no control over."

62.     Stocum was clear that his objective was to transfer control over everything to himself: **"My objective is to set up properties that I have the control of."**  A true and correct copy of the email between Stocum and TKG is attached hereto as Exhibit 6 (emphasis added).

63.     Stocum informed TKG that he had purchased several domain names relating to "collar diversified" and "collar talent" and that he wanted all traffic from those domains to be routed to a new Collar Talent webpage.

64.     Throughout the finalization of this new branding and website, TKG worked at the direction of Defendant Stocum in his position as owner of Delta.  Indeed, Stocum, who has a Collar Diversified email address, communicated with TKG using his Delta email account.[1]

65.     Stocum did not include Collar Jobs on the planning correspondence in September, including Mr. Loree or Gabe Loree.  On information and belief, Stocum did not include any Collar Diversified employees on the planning correspondence in September; the entire process was controlled by Delta.

66.     Instead, Stocum introduced TKG to his "team" behind the implementation, which consisted of three Delta employees all of whom work in Delta's competing Building Technologies business.

67.     TKG told Stocum that the website could be operational by October 10, 2022.

68.     Collar Jobs and the Company only began to learn about this unlawful activity on October 10, 2022.

### Delta Implements Its Plan to Harm and Compete with the Company

69.     In anticipation of an October 10, 2022 launch date of the new Delta/Stocum controlled entity, Collar Talent, Delta and Stocum undertook several deliberate actions to harm the Company and Collar Jobs.

70.     On September 29, 2022, Delta asked its phone provider to create 9-10 new phone numbers on Delta's existing account in anticipation of shifting the Defendant Employees from the Collar Jobs platform and phone system to new phone numbers controlled by Delta and under Delta's account.  A true and correct copy of the email correspondence is attached as Exhibit 7.

---

[1] Collar Jobs and the Company had access to this e-mail string because it forwarded to Stocum's Collar Diversified email account. The Collar Diversified email account was part of the Company's subscription with Collar Jobs.

71.     Upon information and belief, Stocum also directed Company employees to secretly take trade secret, confidential information to use under the "Collar Talent" business.

72.     On September 30, 2022 at 5:02 p.m., in the midst of Stocum's plans to exit the Collar Jobs brand and platform and create a new, replicated brand that he controlled, Defendant Hyde emailed over a thousand "hot leads" from the Collar Jobs platform to his personal email account. The email documenting such activity is attached hereto as Exhibit 8 (redacted).

73.     The information that Defendant Hyde sent to his personal account included the names of "hot leads" and potential placement candidates and detailed, non-public information such as whether they had been vetted, whether they had been interviewed and if so, by which client, skills, and the amount of any placement fee.

74.     The "hot leads" information was housed in the "Bullhorn" owned by Collar Jobs. Some of the information was augmented by the Company's employees with notes as they pursued leads and managed candidates through the automated and proprietary workflow and placement process. The Company had access to the information because of its subscription to Collar Jobs.

75.     The information that Mr. Hyde took also reflected proprietary workflow processes that Collar Jobs created and allowed the Company to use as part of its subscription to the Collar Jobs platform.

76.     The information that Mr. Hyde took would be necessary to have to compete with the Company.

77.     On information and belief, Defendant Hyde deliberately pulled confidential information from the Bullhorn database and internal emails on the @collardiversified.com email exchange to create the spreadsheet that he sent to his personal email account.

78.    ***Less than half an hour*** after Defendant Hyde stole Collar Jobs' and the Company's confidential, trade secret information, Stocum emailed Mr. Loree offering to buy (1) "1% of" the Company, (2) a "replicate of our Bullhorn database under my administrative control;"[2] (3) the collardiversifed.com domain name; and (4) the entire archive of emails from the inception of the Company.  Basically, the critical information for operating the Company, which was owned by Collar Jobs.  This email is attached hereto as Exhibit 9.

79.    This offer was unsolicited.  Mr. Loree had made it clear to Stocum in the past that he had no interest in ever being a minority shareholder of the Company.

80.    In this same email, Stocum informed Mr. Loree that he was going to "hold off on any financial transfers, until we figure out whether or not we can come to terms."

81.    The "financial transfer" referred to by Stocum was the subscription fee due to Collar Jobs the next day, on October 1, 2022.

82.    As explained, above, Collar Jobs owns the platform upon which the Company operated its business.  The Company pays Collar Jobs a monthly subscription fee in exchange for its use of Collar Jobs' platform.

83.    From January 2020 through September 2022, the Company always paid Collar Jobs this subscription fee on the second business day of the month.  Because Delta managed the cashflow for the Company, Delta initiated the subscription fee payment from the Company to Collar Jobs.

84.    The Collar Jobs platform – and the confidential information contained therein – was a critical aspect of the Company's business. As described in Paragraphs 4 – 5; 40 - 42, *supra*, the platform provided all the background and functional support needed for the

---

[2] This is the database owned and controlled by Collar Jobs that aggregated and housed the "hot leads" information that Defendant Hyde sent to himself shortly before Stocum sent this email.

Company's operation.  This operation, by virtue of the platform, proved to be a success, as September 2022 was the highest revenue month and most profitable quarter for the Company since its inception.

85.     On October 1, 2022, for the first time in over two years, Collar Jobs did not receive its monthly subscription fee for the use of its platform by the Company.  To date, Collar Jobs has not received the subscription payment for October.

86.     Upon information and belief, Delta and Stocum were attempting to pressure Collar Jobs into complying with Stocum's demands by withholding the subscription fee.

87.     At the same time, they stole confidential information from the Collar Jobs platform for their backup plan, which was to seize control of the Company through unauthorized actions that violated the Agreement, gut the Company, and then use Collar Jobs' and the Company's confidential, trade secret information to create a competing business.

88.     According to e-mails that Collar Jobs located, on October 6, 2022, the "Collar Talent" website described in paragraphs 59-64, above, went live.  All communications through that platform were directed to Stocum at his Delta email address.

89.     Stocum informed TKG that they were "going through some work getting set up on new communication platforms today[.]" Stocum also directed Defendant Lewis, an employee of the Company, to assist TKG with the "brand and marketing efforts" for this new, Collar Talent, website, brand, and domain. The emails documenting this activity are contained in Exhibit 6.

90.     Unaware of Stocum's scheming, on October 7, 2022, Mr. Loree responded to Stocum's demands, rejecting the offer.  Mr. Loree informed Stocum that if Delta wanted to make

"a noteworthy offer to purchase 100% of Collar Jobs' stake" in the Company, Collar Jobs would consider it.

91.     Mr. Loree also reminded Stocum that the subscription fee was now a week overdue and that without prompt payment, Collar Jobs would have to suspend the Company's use of the platform.

92.     Just a few short hours later, the Collar Jobs was alerted to a significant breach of the Collar Jobs platform.  Out of an abundance of caution, Collar Jobs suspended the platform to identify the extent and cause of the breach.  Mr. Loree emailed Stocum to inform him of the breach and the suspension of the platform, and that he had contacted counsel and the authorities.

93.     Ten minutes later, at 2:19 p.m., Stocum emailed Mr. Loree back, and, despite the fact that Stocum had already launched an entirely new brand without any input from or knowledge by Mr. Loree or Collar Jobs and without giving them access to the new platform, telling Mr. Loree to "relax" and that he "continues to view [Mr. Loree] as business partners in our 50/50 venture."  Stocum informed Mr. Loree that there "has been no activity that requires counsel and/or authorities."

94.     Stocum again told Mr. Loree he was "no longer transferring funds" and, for the first time, disclosed vaguely that there "are changes being made that are in the best interest of [the Company], which we both own."

95.     At 6:03 p.m. that same evening, Stocum emailed Mr. Loree yet again and announced that "as of today, Collar Diversified LLC has separated from the Collar Jobs brand identification and we are on communications platforms that are administratively controlled by me."  This email is attached hereto as Exhibit 10.

96.     Despite being a non-controlling, 50% owner in the Company, Stocum stated that "[a]t this point in time, *I* do not have any interest in Collar Jobs, or whatever other business ventures you are pursuing/developing.  *I* am going to build this business in the vision that you and I once shared and eventually you'll benefit handsomely." *Id.* (emphasis added).

97.     Stocum further stated that he was "not interested in leveraging the Collar Jobs platform anymore[.]"  *Id.*  And, while Stocum claimed that he "welcome[d] [Mr. Loree's] continued involvement in Collar Diversified," Stocum also acknowledged that he was withholding information from Mr. Loree, stating that "[t]here's much I am not communicating right now[.]"

98.     That very same date, on October 7, 2022, Collar Jobs and Mr. Loree discovered that Delta and/or Stocum had re-routed data and all of the Company's phone numbers to Delta's primary communications system and the new numbers that Delta had acquired for the Defendant Employees under Delta's account.

99.     In addition, on information and belief, between September 30 and October 7, 2022, Stocum and/or the Employee Defendants mirrored, exported, or otherwise saved their Company email messages containing confidential and proprietary information from the Collar Jobs platform, including new "hot leads" that Collar Jobs identified and vetted during that time, and continue to have access to the content of those emails while operating on their new Collar Talent email accounts.

100.    Mr. Loree was never consulted regarding any of the material changes that Stocum implemented, including Stocum's unilateral decision to abandon the Collar Jobs platform, and never agreed to them.

101.     In the almost two weeks since Stocum sent his October 7, 2022 email, he has not shared any information with Collar Jobs or Mr. Loree regarding his activities, nor has he provided Mr. Loree with a "Collar Talent" email account.  Collar Jobs also does not have any access to the "Collar Talent" systems set up by Delta and/or Stocum.

102.     In a departure from previous months, Delta has also not registered any new revenue on the Company's Profit and Loss Statement.  Certainly not any revenue matching September 2022's performance, while on the Collar Jobs' platform.

103.     Delta and/or Stocum also unilaterally set up a new company LinkedIn page for "Collar Talent" and, by October 11, 2022, the Defendant Employees had changed their LinkedIn profiles to "Collar Talent," confusing the marketplace and exemplifying yet another example of the employees directly competing with Collar Diversified in violation of the non-compete agreement.

104.     On October 17, 2022, Collar Talent posted multiple updates on its LinkedIn page to share news of and welcome "new hire, Abigail Burke joining our team as a Hiring Specialist," "new hire, Christina Rakich joining our team as a Hiring Specialist," "new hire, Regina Ziccardi joining our team as a Hiring Specialist," and "new hire, Cullen Barelka joining our team as a Hiring Specialist."  Exhibit 11.  Burke, Rakich, Ziccardi, and Barelka were employees of the Company, who are now being welcomed to the new "#Growing" Collar Talent "team."  *Id.*

105.     The "Collar Talent" logo that Stocum "designed" is virtually identical to the logo used by Collar Jobs.  The Company's logo is a collar shape, with the right lapel colored teal. The "Collar Talent" logo is also in a collar shape, but instead of the Company's teal, the right lapel is a deeper blue – the same exact blue used on Delta's logo.  *Compare* Exhibit 12 (Collar

Jobs Logo) *with* Exhibit 13 (Collar Talent Logo) *with* Exhibit 14 (Delta's Logo). Thus, Stocum's plot to completely comingle the Company with Delta is even apparent in the logos.

106.    Delta has a 50% ownership of the Company.  Thus, it does not have the majority ownership in the Company.  Accordingly, it is not permitted to change the ownership structure, delegate the managerial functions of the Company, or make material changes to the Company's business without the approval of Collar Jobs, the other 50% owner of the Company.

107.    Yet it did just that.  The unilateral decision to "separate" the Company from the Collar Jobs platform and move the Company to other "communications platforms" that are controlled entirely by Delta and, therefore, Stocum, is a material change to the business.  This material change was not the result of any discussion, proposal, or consensus by the shareholders. Under the Agreement, Delta lacked the authority to make a unilateral decision such as this.

108.    Delta, through Stocum, set up a Collar Talent as a competing company that is designed to be free of any ties to Collar Diversified or Collar Jobs.

109.    Delta's actions constitute a breach of the Agreement.

### Delta and Stocum, along with the Employee Defendants, Improperly Use the Company's and Collar Jobs' Confidential and Proprietary Information to Compete with the Company

110.    Delta does not own platform which the Company operates from.  Collar Jobs owns the platform, and databases within that platform.

111.    Delta is not permitted to misuse any of the confidential information or trade secrets of the Company, pursuant to the Agreement.

112.    Documentary evidence confirms that Delta, through its unilateral and prohibited decision to separate the Company "from the Collar Jobs brand identification" and only use platforms that are controlled by Stocum nonetheless continues to use Collar Jobs' and/or the

Company's confidential information to solicit business on behalf and for the benefit of Delta through the Collar Talent brand.

113.    On or around October 6, 2022, Stocum launched a new brand, website and domain name: collartalent.com.  As described *supra*, the launch of this new website and "brand identification" at the behest of Stocum was done covertly for weeks prior to its launch and was devised entirely by Delta's employees.

114.    The Employee Defendants changed their company affiliation on LinkedIn from "Collar Diversified" to "Collar Talent" on or about October 11, 2022.  Therefore, Collar Talent appears to be a separate organization from Collar Diversified.

115.    The Defendant Employees, using information taken from the Collar Jobs platform and Collar Diversified email boxes (owned by Collar Jobs) that contained Collar Jobs platform emails and data, have reached out to candidates on the "hot leads" list stolen by Defendant Hyde and continued to solicit their interest, providing new contact information under the "Collar Talent" brand.

116.    In addition, the Employee Defendants continue to reach out to new leads that came in through the Collar Jobs platform between September 30 (when Defendant Hyde stole the "hot leads" information) and October 7, 2022, when Collar Jobs shut off access to its platform due to the security breach.  They would only have this information if they retained data and copies of their Company emails under the Collar Jobs platform after October 7, when their access to those email accounts was suspended.

117.    Multiple Employee Defendants have improperly rerouted communications with candidates sourced by Collar Jobs to their new "Collar Talent" email addresses and their new phone numbers under the Delta account.

118.    Stocum also has blurred the lines between Delta and the Company, impermissibly comingling them and treating them as a single company under Stocum's control.

119.    For example, on September 27, 2022, Stocum emailed employees from both Delta and the Company, referring to them collectively as "Team."

120.    Stocum routinely emailed both Delta and Company employees as if they were a unitary team, despite Mr. Loree's repeated requests that he keep the companies separate.

121.    Upon information and belief, Delta is using the Company's and Collar Jobs' propriety information to further its own business, not the business of the Company, "gutting" the Company for its own gain.

122.    Documentary evidence confirms that the Employee Defendants, at the direction of Stocum, were using their Company emails to conduct work and recruiting efforts for Delta, rather than the Company.

123.    For example, in August 2022, Defendant Lewis, an employee of the Company, confirms that she was recruiting individuals to work for Delta.  She emailed a candidate from her Company email with the email subject line reading "Collar & Delta Diversified" and had copied Delta employees on the email, informing the candidate that they would be meeting the "client services manager with Delta Diversified."

124.    Defendant Lewis also emailed another candidate in August 2022, using her Company email address, thanking the candidate for their "application for the Delta Diversified Recruiter job."  She set up a phone call with the candidate to interview with the client services manager at Delta Diversified.

125.    Defendant Lewis, again using her Company email address, scheduled headshot photos for the "companies," i.e., both Delta and the Company.  Examples of Defendant Lewis's various emails are attached hereto as Exhibit 15.

126.    Upon information and belief, all the Employee Defendants are working at the direction of Stocum and Delta in order to compete with the Company using confidential and propriety information of both the Company and Collar Jobs, including information from their Collar Diversified email accounts (owned by Collar Jobs), client contacts, and systems, in an effort to reverse engineer the Collar Jobs platform, locking Collar Jobs and Mr. Loree out entirely.

127.    As noted *supra*, each of the Employee Defendants have (1) non-compete obligations to the Company and (2) non-disclosure obligations to Collar Jobs.  Delta similarly has non-disclosure and non-compete obligations that it owes to the Company.  These above-described actions are in violation of both obligations.

128.    Without the intervention of this Court requiring Delta to honor its contractual duties and to stop Delta (through its Building Technologies segment), Stocum, and the Employee Defendants from using the Company's and Collar Jobs' confidential information, the Company will suffer irreparable harm by the loss of its revenue, as well as goodwill and reputation. Moreover, the actions of Stocum and Delta in essentially forcing the Employee Defendants to breach their contractual duties compounds the problem and supports a finding that the public interest is served by granting emergency injunctive relief.

## COUNT I
### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836, *et seq.*
### (By Collar Jobs As to All Defendants)

129.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

130.    Collar Jobs expended substantial time, labor, and money to develop and implement proprietary business methods, strategies, technologies, processes, products, marketing plans and procedures, customers, and other proprietary information regarding its customer preferences, contract information, and other confidential and proprietary information.

131.    Collar Jobs' trade secret information constitutes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, because it derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

132.    Collar Jobs' trade secret information is designed for connecting clients and placing candidates nationwide.

133.    Collar Jobs has taken reasonable measures and exercised due diligence to prevent its confidential processes, technologies and information from becoming available to persons other than those selected to have access.   For example, Collar Jobs required the Company's employees to sign nondisclosure agreements.  Collar Jobs also restricts access to and disclosure of its confidential, proprietary, and trade secret information by requiring passwords to access the platform, and preventing users from downloading or exporting the databases containing competitive information.

134.    As a member of the Company, which paid subscription fee for access to Collar Jobs' confidential information and proprietary platform, Delta was given access to certain of Collar Jobs' trade secret information, aggregated detailed client and candidate information,

marketing plans and strategies, training, strategies for securing new business and recruiting new candidates, and other trade secret information.

135. Through their positions as CEO, Hiring Specialists, Market Leader, Quality Assurance Coordinator, Business Analyst, and Internal Recruiting Lead and Brand Ambassador, Stocum and the Employee Defendants were given access to certain Collar Jobs' trade secret information, aggregated detailed client and candidate information, marketing plans and strategies, training, strategies for securing new business and recruiting new candidates, and other trade secret information.

136. Delta, Stocum, and the Employee Defendants acquired Collar Jobs' trade secret information by improper means and/or improperly disclosed or used such information in a manner that exceeded the scope of their authorization.

137. Delta, Stocum, and the Employee Defendants, without authority and through improper means, have misappropriated, used, and disclosed Collar Jobs' trade secrets and confidential information to operate as Collar Talent.

138. Delta, Stocum, and the Employee Defendants acted knowingly, willfully, maliciously, intentionally, and in bad faith. Therefore, statutory, punitive damages, and attorneys' fees provided by statute are appropriate.

139. The misappropriation of trade secrets has and will proximately cause substantial damage to Collar Jobs including, but not limited to, loss of goodwill, loss of candidates, loss of clients, loss of profits, loss of revenue, and future loss of the same amount to be determined at trial.

140. Unless Defendants are preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating Collar Jobs' proprietary and trade secret

information, Collar Jobs will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

## COUNT II
### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE OHIO UNIFORM TRADE SECRETS ACT, R.C. § 1333.61, *et seq.* (By Collar Jobs As to All Defendants)

141.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

142.    Collar Jobs' trade secret information also constitutes trade secrets under R.C. § 1333.61, *et seq.* because it derives economic value from not being generally known or readily ascertainable by independent means and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

143.    Under R.C. § 1333.61, *et seq.*, Collar Jobs is entitled to recover damage for the actual loss caused by the Defendants' misappropriation and punitive damages three times the damages award.  Collar Jobs is also entitled to a preliminary and permanent injunction prohibiting continuing or future trade secret misappropriate, destruction of all misappropriated trade secrets, and attorneys' fees and costs.

## COUNT III
### MISAPPROPRIATION OF TRADE SECRETS DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836, *et seq.* (Derivative Action by Collar Diversified As to All Defendants)

144.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

145.    The Company expended substantial time, labor, and money to develop and implement proprietary business methods, training, strategies, marketing plans and procedures,

customer and candidate information, and other proprietary information regarding its customer preferences, contract information, and other confidential and proprietary information.

146.    The Company's trade secret information constitutes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., because it derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

147.    The Company's trade secret information is designed for use locating clients and placing candidates nationwide.

148.    The Company has taken reasonable measures and exercised due diligence to prevent its confidential technologies and information from becoming available to persons other than those selected to have access.  The Company restricted access to and disclosure of its confidential, proprietary, and trade secret information by, among other things, password protecting the databases and, through agreement with Collar Jobs, preventing users from downloading or exporting the databases containing competitive information.

149.    As a member of the Company, Delta was given access to the Company's trade secret information.

150.    Through their positions as CEO, Hiring Specialists, Market Leader, Quality Assurance Coordinator, Business Analyst, and Internal Recruiting Lead and Brand Ambassador, Stocum and the Employee Defendants were also given access to certain of the Company's trade secret information.

151.    Delta, Stocum, and the Employee Defendants acquired the Company's trade secret information by improper means and/or improperly disclosed or used such information in a manner that exceeded the scope of their authorization.

152.    Delta, Stocum, and the Employee Defendants, without authority and through improper means, have misappropriated, used, and disclosed the Company's trade secrets and confidential information to operate as Collar Talent.

153.    Delta, Stocum, and the Employee Defendants acted knowingly, willfully, maliciously, intentionally, and in bad faith.  Therefore, statutory, punitive damages, and attorneys' fees provided by statute are appropriate.

154.    The misappropriation of trade secrets has and will proximately cause substantial damage to the Company including, but not limited to, loss of goodwill, loss of candidates, loss of clients, loss of profits, loss of revenue, and future loss of the same amount to be determined at trial.

155.    Unless Defendants are preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating the Company's proprietary and trade secret information, the Company will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

<u>COUNT IV</u>
**MISAPPROPRIATION OF TRADE SECRETS**
**THE OHIO UNIFORM TRADE SECRETS ACT, R.C. § 1333.61,** *et seq.*
**(Derivative Action by Collar Diversified As to All Defendants)**

156.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

157.    The Company's trade secret information also constitutes trade secrets under R.C. § 1333.61, *et seq.* because it derives economic value from not being generally known or readily

ascertainable by independent means and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

158.    Under R.C. § 1333.61, *et seq.,* Collar Jobs is entitled to recover damage for the actual loss caused by the Defendants' misappropriation and punitive damages three times the damages award.   Collar Jobs is also entitled to a preliminary and permanent injunction prohibiting continuing or future trade secret misappropriate, destruction of all misappropriated trade secrets, and attorneys' fees and costs.

<u>COUNT V</u>
**BREACH OF THE OPERATING AGREEMENT**
**(As to Defendant Delta on Behalf of Collar Jobs)**

159.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

160.    The Agreement between Delta and Collar Jobs is a valid, enforceable contract.

161.    Collar Jobs performed its obligations under the Operating Agreement.

162.    Delta breached its obligations under Section 5.1, 5.2, 5.3 5.7 and 10.3 of the Agreement by including, but not limited, to:  (1) unilaterally acting on behalf the Company to set up a new and separate brand, website, domain name, email accounts, and operations; (2) removing Collar Jobs from all decision making with respect to the Company and shutting it out from "Collar Talent"; (3) unilaterally taking the Company off of the Collar Jobs platform; (4) misusing the employees of the Company, as well as Collar Jobs' and the Company's confidential and proprietary information for its own gain; and (5) taking the Company's and Collar Jobs' trade secret information to create its own platform controlled by Stocum.

163.    The conduct described above constitutes separate and distinct breaches of the Agreement.

164.    Delta's conduct is also a breach of the covenant of good faith and fair dealing implied in contracts under Ohio law.

165.    As a result of these breaches, Delta is liable to Collar Jobs, who has a 50% ownership in the Company.

166.    Collar Jobs was damaged in an amount in excess of $700,000 as a result of the breaches described above.  These damages are a direct and proximate result of Delta's refusal to honor its obligations under the Agreement.

## COUNT VI
## BREACH OF OPERATING AGREEMENT
### (Derivative Action by Collar Diversified as to Defendant Delta)

167.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

168.    The Agreement between Delta and Collar Jobs is a valid, enforceable contract, and is for the benefit of the Company.

169.    As a result of the breaches described in Paragraphs 162-165, above, Delta is liable to the Company in excess of $700,000.  The Company was damaged as a result of the breaches described above.  These damages are a direct and proximate result of Delta's refusal to honor its obligations under the Agreement.

## COUNT VII
## BREACH OF FIDUCIARY DUTY
### (As to Defendant Delta on Behalf of Collar Jobs)

170.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

171.    Delta and Collar Jobs were both members of the Company, a limited liability company under Ohio law.

172.    As members of the Company, Delta and Collar Jobs have a fiduciary relationship under R.C. § 1706.31.

173.    As a fiduciary, Delta owes Collar Jobs a host of duties, including the duty of care, duty of loyalty, and duty of confidentiality.

174.    Delta is using Collar Jobs' trade secret and confidential information, including information obtained from Collar Jobs' own platform, to begin its own venture and recruiting platform, comingling it with Delta's existing Building Technologies business.

175.    Such actions by Delta constitute a breach of its fiduciary duties to Collar Jobs, including the duty of confidentiality, loyalty, and care.

176.    As a result of the breaches described above, Collar Jobs has been damaged in excess of $700,000, as its confidential and trade secret information is being used destroy the Company which Collar Jobs owns half of, by virtue of Delta creating a competing job recruitment platform.

177.    These damages are a direct and proximate result of Delta's refusal to honor its fiduciary duties to Collar Jobs.

**COUNT VIII**
**BREACH OF FIDUCIARY DUTY**
**(Derivative Action by Collar Diversified As To Delta)**

178.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

179.    As a member of the Company, Delta has a fiduciary relationship with the Company.

180.    As a fiduciary, Delta owes the Company a host of duties, including the duty of care, duty of loyalty, and duty of confidentiality.

181.    The Company's Operating Agreement provides that Delta, as a fiduciary, must not misuse any the Company's confidential or trade secret information. (Agreement, § 10.3.)

182.    Moreover, as a member of the Company, Delta must put the Company's interests before its own.

183.    Delta is using the Company's trade secret and confidential information, including information obtained through the Company's subscription to the Collar Jobs platform, to begin its own venture and recruiting platform, comingling it with Delta's existing Building Technologies business.

184.    Such actions by Delta constitute a breach of its fiduciary duties to the Company, including the duty of confidentiality, loyalty, and care.

185.    Delta is not only breaching the duty of confidentiality by misusing the Company's confidential information, but is also breaching the duty of loyalty to the Company by using the Company's own information to usurp opportunities from the Company.

186.    As a result of the breaches described above, the Company has been damaged in excess of $700,000, as its confidential and trade secret information is being used against it by Delta to create a competing job recruitment platform.

187.    These damages are a direct and proximate result of Delta's refusal to honor its fiduciary duties to the Company.

## <u>COUNT IX</u>
## BREACH OF NONCOMPETE OBLIGATIONS
### (Derivative Action by Collar Diversified as to Employee Defendants)

188.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

189.    The Employment Agreements between each of the Employee Defendants and the Company are valid, enforceable, contracts.

190.    Pursuant to the Employee Agreements, each Employee Defendant agreed not to assist "any business entity in competition with the Company."  (Employee Agreement § 9(a).)

191.    The Employee Defendants breached their obligations under the Employee Agreements by (1) performing work on behalf of Delta and/or Collar Talent, who is in the business of recruiting and is in competition with the Company; and (2) assisting Delta, Stocum, and/or Collar Talent in their preparations to subsume the Company and use its proprietary information.

192.    As a result of the breaches described above, the Employee Defendants are liable to the Company.  The Company has an expectation that is own employees are working on its behalf, not on behalf of Delta, another entity.

193.    The Company was damaged as a result of the breaches described above in excess of $700,000.  These damages are a direct and proximate result of the Employee Defendants refusal to honor its obligations under the Agreement.

### COUNT X
### BREACH OF NONDISCLOSURE OBLIGATIONS
### (By Collar Jobs as to Employee Defendants)

194.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

195.    The Nondisclosure Agreements between each of the Employee Defendants and Collar Jobs are valid, enforceable, contracts.

196.     Pursuant to the Nondisclosure Agreements, each Employee Defendant agreed not to disclose any of Collar Jobs' confidential information to any person or entity without Collar Jobs' consent.  (Nondisclosure Agreement § 2.)

197.     This confidential information included customer information, computer programs, software, and marketing plans.  (Nondisclosure Agreement § 1.)

198.     It also included candidate and client information contained in emails generated through the Collar Jobs workflow and maintained by Collar Jobs.

199.     The Employee Defendants breached their obligations under the Nondisclosure Agreements by (1) taking confidential client and candidate information housed in the Collar Jobs database and using it for unauthorized purposes; (2) using confidential and trade secret information from Collar Jobs' platform, including emails, to perform work on behalf of Delta and/or Collar Talent; and (3) using Collar Jobs' marketing and customer information to assist Delta and Stocum in their plans to compete with the Company.

200.     As a result of the breaches described above, the Employee Defendants are liable to Collar Jobs in excess of $700,000.  Collar Jobs was damaged as a result of the breaches described above.  These damages are a direct and proximate result of Employee Defendant's refusal to honor its obligations under the Agreement.

## COUNT XI
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
### (Derivative Action by Collar Diversified as to Defendants Stocum and Delta)

201.     The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

202.    The Employee Defendants and the Company entered into the Employee Agreements, which placed multiple contractual obligations on the Employee Defendants to the Company, including the obligation not to compete with the Company.

203.    Stocum and Delta both had knowledge of the existence of the Employee Agreements between the Employee Defendants and the Company.  They were both aware the Employee Defendants were not permitted to compete with the Company during the course of their employment.

204.    Without justification, Stocum and Delta intentionally interfered with the Company's contractual relationship with the Employee Defendants, by directing the Employee Defendants to further their scheme to unilaterally take over the Company and compete with it.

205.    The Employee Defendants' decision to assist Delta and Stocum to compete with the Company, as induced and enabled by Delta and Stocum, resulted in actual damage to the Company in excess of $700,000.  Such damage includes, but is not limited to, the Company essentially losing control over all of its employees and having no employee to further its own business objectives.

## <u>COUNT XII</u>
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
### (By Collar Jobs as to Defendants Stocum and Delta)

206.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

207.    The Employee Defendants and Collar Jobs entered into the Nondisclosure Agreements, which placed multiple contractual obligations on the Employee Defendants to the Collar Jobs, including the obligation not to disclose Collar Jobs' confidential information.

208.    Stocum and Delta both had knowledge of the existence of the Nondisclosure Agreements between the Employee Defendants and Collar Jobs.  They were both aware the Employee Defendants were not permitted to use Collar Jobs' confidential information.

209.    Without justification, Stocum and Delta intentionally interfered with the Collar Jobs' contractual relationship with the Employee Defendants, by directing the Employee Defendants to use Collar Jobs' confidential information in furtherance of their scheme to oust Collar Jobs from the management of the Company.

210.    The Employee Defendants' decision to assist Delta and Stocum to compete with the Company, as induced and assisted Delta and Stocum, resulted in actual damage to Collar Jobs. Such damage includes, but is not limited to, Collar Jobs' confidential informing being improperly disseminated and the loss of Collar Jobs' ability to control its interest in the Company.

## COUNT XIII
## CONVERSION
### (By Collar Jobs as to All Defendants)

211.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

212.    Upon information and belief, Delta, Stocum, and the Employee Defendants have wrongfully maintained possession of information regarding customers, business plans, workflow processes, and other confidential information, without authorization and in a manner inconsistent with any authorization that they previously had while the Company had a subscription to the Collar Jobs platform.

213.    Such information is the exclusive property of Collar Jobs.

214.    Upon information and belief, Delta, Stocum, and the Employee Defendants continue to wrongfully possess and use this information.

215.    Such actions constitute conversion and misappropriation of Collar Jobs' property, which has proximately caused Collar Jobs to suffer damages in an amount to be proven at trial.

216.    Upon information and belief, Delta, Stocum, and the Employee Defendants' conduct was willful, malicious, outrageous, deliberate and made with full knowledge of, and total disregard for Collar Jobs' rights.  Therefore, punitive damages are warranted.

**COUNT XIV**
**CONVERSION**
**(Derivative Action by Collar Diversified as to All Defendants)**

217.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

218.    Upon information and belief, Delta, Stocum, and the Employee Defendants have wrongfully maintained possession of information regarding customers, business plans, automated job listing strings, workflow processes, and other confidential information, without authorization and in a manner inconsistent with any authorization that they previously had while the Company had a subscription to the Collar Jobs platform.

219.    Such information is the Company's exclusive property.

220.    Upon information and belief, Delta, Stocum, and the Employee Defendants continue to wrongfully possess and use this information.

221.    Such actions constitute conversion and misappropriation of the Company's property, which has proximately caused the Company to suffer damages in an amount to be proven at trial.

222.    Upon information and belief, Delta, Stocum, and the Employee Defendants' conduct was willful, malicious, outrageous, deliberate and made with full knowledge of, and total disregard for the Company's rights.  Therefore, punitive damages are warranted.

## COUNT XV
## PRELIMINARY AND PERMANENT INJUNCTION

223.     The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

224.     Collar Jobs and the Company have demonstrated a likelihood of success on the merits in this Complaint.

225.     Given the extensive and pervasive activity regarding Delta and Stocum's scheme to compete the Company and completely oust Collar Jobs from the Company, both the Company and Collar Jobs are in danger of completely losing any control of their own dealings and proprietary information and trade secrets.

226.     In light of the allegations herein, both Collar Jobs and the Company have already suffered and will continue to suffer immediate and irreparable harm by Delta and Stocum's actions.    Moreover, both the Employee Agreements and the Nondisclosure Agreement specifically acknowledge that the breach of these agreements constitutes irreparable injury.

227.     If the Court does not grant this injunctive relief, Collar Jobs and the Company will have no adequate remedy at law.

228.     WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants as follows:

a.       judgment in its favor as to all counts,

b.       that a temporary restraining order and be entered ordering Stocum and Delta to immediately discontinue competing with the Company;

c.       that a temporary restraining order be entered ordering the Employee Defendants to immediately discontinue assisting Delta in its efforts to compete with the Company;

     d.      that a temporary, preliminary and permanent injunction be entered enjoining further breaches or attempted breaches of the Agreement, the Employee Agreements, and the Nondisclosure Agreements,

     e.      an award of reasonable attorneys' fees and punitive damages; and

     f.      Any and all other relief the Court deems just, equitable and proper.

Dated: October 20, 2022.             Respectfully submitted,

*/s/Stephanie Chmiel*
Stephanie Chmiel (Ohio Bar # 0087455)
**THOMPSON HINE LLP**
505 W. Whittier St.
Columbus, Ohio 43215
(614) 469-3291
Stephanie.Chmiel@ThompsonHine.com

Brenna Fasko  (Ohio Bar # 0084897)
Rebecca Pronesti (Ohio Bar # 0101544)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-5500
Brenna.Fasko@ThompsonHine.com
Rebecca.Pronesti@ThompsonHine.com

*Counsel for Plaintiffs*

## **VERIFICATION**

STATE OF OHIO                                    )
                                                 ) ss:
COUNTY OF GE~~AUGA~~ *Cuyahoga*                  )

Geoff Loree, of full age, being duly sworn according to law, upon oath, deposes and says:

I am the Managing Director and sole member of Park Resilience, LLC which is the sole member

of Collar Jobs, LLC ("Collar"). I have read the foregoing Verified Complaint and all the

allegations contained therein. Except as to allegations alleged upon information and belief,

which allegations I believe to be true, all the allegations in the Complaint are true based on my

personal knowledge, the records of Collar or information available through employees or agents

of Collar.

_____
Geoff Loree

Sworn and subscribed to before
me this 20th day of October, 2022.

_____
NOTARY PUBLIC

DAVE SEESE
Notary Public, State of Ohio
My Comm. Expires May 10, 2023
Recorded in Cuyahoga County

47

## JURY DEMAND

Pursuant Fed. R. Civ. P. 38(b), plaintiff hereby requests a trial by jury as to all issues so triable.

/s/ Stephanie Chmiel

*An Attorney for Plaintiffs*